KAB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Sean Bennett,

                Plaintiff,

v.

City of Phoenix, et al.,

                Defendants.

No. CV-23-02425-PHX-ROS (DMF)

**ORDER**

Plaintiff Sean Bennett, who is represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983 and Arizona state law.  Pending before the Court are: (1) Defendants' Motion to Dismiss (Doc. 8); (2) Plaintiff's Notice of Party Dismissal (Doc. 14); and (3) the February 28, 2014 Order to Show Cause (Doc. 19).

**I.    Background**

In his Complaint, Plaintiff relevantly alleges as follows.  On August 13, 2021, after boarding a flight departing from Phoenix, Arizona, a woman with no identification pointed at Plaintiff and told him he needed to move to a seat across the aisle. (Doc. 1-1 at 5-6.)  Plaintiff could not hear the woman because he was wearing headphones and she was wearing a mask and, as he started to remove his headphones, the woman "stormed off." (*Id.* at 5-6.)  Plaintiff began to look for his ticket and was approached by a woman in an American Airlines uniform, who told him to leave the plane immediately. (*Id.* at 6.)  Plaintiff grabbed his bag and began to put on his shoes; the flight attendant told him that if he did not get off the plane, the plane would be deboarded. (*Id.* at 6.)  Plaintiff left the plane without touching anyone. (*Id.*)

An employee of American Airlines called the police and reported that Plaintiff was physically fighting with the crew and there was a police emergency. (*Id.* at 7.) The police dispatcher reported that a fight was "currently underway within the aircraft and that the police needed to 'step it up' in order to respond to the disturbance hastily." (*Id.*)

Once in the jetway, Plaintiff called his wife and leaned against wall while reviewing flight information on overhead screens. (*Id.* at 7.) Plaintiff saw Defendants City of Phoenix police officers Cottrell, Denham, Blanc, Peru, and Hogan and "peacefully raised his arms to wave at the Officer Defendants and let them know that he might be who they were looking for." (*Id.* at 8.) Plaintiff was then tackled and bear hugged by the Officer Defendants. (*Id.*) One officer "hit him at a high rate of speed and fell on top of him to the ground" and the other four officers spread his legs and arms and handcuffed him. (*Id.*) "They then dragged" Plaintiff "down a flight of stairs and threw him into a police car." (*Id.*) At no time did Plaintiff resist and he was bleeding and bruised with a torn rotator cuff. (*Id.*) Five minutes later, Plaintiff was pulled out of the car and chained to the floor of an airport jail cell. (*Id.*) Ten minutes later, "a captain" walked in and attempted to help Plaintiff get an immediate flight. (*Id.*) After investigating, the Defendant Officers "realized that at no time was there any physical altercation between" Plaintiff and flight staff and Plaintiff was released. (*Id.* at 9.)

Plaintiff alleges: (1) a Fourth Amendment false arrest claim against the City of Phoenix and Defendants Phoenix Police Officers Cottrell, Denham, Blanc, Peru, and Hogan (Count One); (2) a Fourth Amendment false imprisonment claim against the City of Phoenix and Defendants Phoenix Police Officers Cottrell, Denham, Blanc, Peru, and Hogan (Count Two); (3) negligence/gross negligence against all Defendants (Count Three); (4) assault against all Defendants (Count Four); (5) battery against all Defendants (Count Five); (6) "Instigating or participating in false arrest and imprisonment" against all Defendants (Count Six); and (7) Intentional Infliction of Emotional Distress against all Defendants (Count Seven).

**II.    Plaintiff's Notice of Party Dismissal**

Plaintiff filed a Notice pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure dismissing Defendant City of Phoenix from all claims in this action and

1    dismissing Defendant Officers Cottrell, Denham, Blanc, Peru, and Hogan from Counts

2    Three through Seven.  (Doc. 14.)  In the Notice, Plaintiff specified that the dismissal was

3    without prejudice.  Defendants responded to the Notice asserting that the dismissal should

4    be with prejudice because, as argued in their Motion to Dismiss, "the City can never have

5    vicarious liability for the § 1983 claims at issue in this case, [and] dismissal must be with

6    prejudice" and "Plaintiff's state law tort claims against the City and the Officer Defendants

7    are barred by the one-year statute of limitations for claims against public entities or

8    employees, A.R.S. § 12-821, and failure to comply with Arizona's notice of claim statute."

9    (Doc. 17 at 2.)

10           Neither party addresses why these issues were not resolved during the meet and

11   confer required by LRCiv 12.1(c).  Regardless, Plaintiff cannot use the notice of voluntary

12   dismissal contemplated under Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure

13   for a piecemeal dismissal of certain claims against the individual Defendants.  *Hells*

14   *Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005) ("In the

15   specific context of Rule 41(a)(1), we have held that the Rule does not allow for piecemeal

16   dismissals. Instead, withdrawals of individual claims against a given defendant are

17   governed by Fed.R.Civ.P. 15, which addresses amendments to pleadings.").

18           Because Plaintiff seeks dismissal of the City of Phoenix as a Defendant, he may use

19   Rule 41(a)(1)(A)(i) to dismiss the City of Phoenix, but to the extent Plaintiff seeks only to

20   dismiss the state-law claims against the individual Defendants, the Court must construe

21   Plaintiff's Notice as a motion to amend the complaint.  *See id.* ("As its title, "Dismissal of

22   Actions," suggests, Rule 41, or at least Rule 41(a), governs dismissals of entire actions, not

23   of individual claims [but the] rule [has been extended] to allow the dismissal of all claims

24   against one defendant, so that a defendant may be dismissed from the entire action.").

25   Accordingly, the City of Phoenix has already been dismissed from this action without

26   prejudice pursuant to Rule 41(a)(1)(A)(i).

27           With regard to dismissal of the state law claims against the officer Defendants,

28   Defendants argued in their Motion to Dismiss that Plaintiff's state-law claims are barred

by Arizona's one-year statute of limitations under Arizona Revised Statutes section 12-821 and Plaintiff did not comply with Arizona's Notice of Claim Statute, Arizona Revised Statutes section 12-821.01. Plaintiff did not respond to this part of the Motion to Dismiss, but instead improperly sought to voluntarily dismiss these claims without prejudice. Dismissal pursuant to Arizona's Notice of Claim statute would be with prejudice. *See, e.g.*, *Kroncke v. City of Phoenix*, No. 1 CA-CV 10-0676, 2011 WL 6809841, at *3 (Ariz. Ct. App. Dec. 27, 2011) ("we hold that dismissal with prejudice was proper on the alternative ground that [Kroncke's tort claims] have been barred by his failure to comply with the mandatory notice of claim statute"); *Holmes v. City of Flagstaff*, No. CV09-8156 PCT-DGC, 2010 WL 994190, at *4 (D. Ariz. March 17, 2010) (dismissing state law claims with prejudice because the plaintiff did not file a notice of claim).

Motions to amend should be granted unless the district court determines that there has been a showing of: (1) undue delay; (2) bad faith or dilatory motives on the part of the movant; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; or (5) futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, it appears there may have been undue delay and dilatory motives in seeking to dismiss the state-law claims because Plaintiff does not explain why he waited until a motion to dismiss was filed to (improperly) attempt to dismiss those claims. Likewise, it appears the amendment is futile because, on this record, the state law claims should be dismissed with prejudice if the Court were to consider Defendants' Motion to Dismiss, and Defendants could be prejudiced if these claims are not dismissed with prejudice. Accordingly, on this record, these factors weigh in favor of denying the Motion to Dismiss, and the state-law claims will be dismissed with prejudice because Plaintiff did not comply with Arizona's Notice of Claim statute.

## III.   Order to Show Cause

In a February 28, 2024 Order to Show Cause, the Magistrate Judge stated:

> On November 21, 2023, Defendants City of Phoenix, Joel Cottrell, Todd Blanc, Rudolfo Peru, and Ryan Hogan filed

- 4 -

Notice of Suggestion of Death, stating that "based upon information from local news sources, Defendant Benjamin Denham passed away on or about February 8, 2023" (Doc. 7). Fed. R. Civ. P. 25(a)(1) provides:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

> Ninety (90) days have passed since the filing of the notice of suggestion of death (Doc. 7), and no motion for substitution has been filed.

(Doc. 19 at 1.)  The Magistrate Judge therefore ordered Plaintiff to show cause in writing why Defendant Benjamin Denham and Unknown Denham should not be dismissed pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure.  (*Id.* at 2.)  Plaintiff did not file a Response to the Order to Show Cause.

Plaintiff did not respond to the Order to Show Cause and did not file a Motion to substitute within 90 days as required by Rule 25(a)(1) of the Federal Rules of Civil Procedure.  Accordingly, Defendant Denham will be dismissed pursuant to Rule 25(a)(1).  Defendant Unknown Denham will be dismissed because there is no evidence this Defendant has ever been served and Plaintiff did not respond to the Court's Order to Show Cause why this Defendant should not be dismissed.

## IV.     Motion to Dismiss

Defendants assert that Plaintiff fails to state a false arrest or false imprisonment claim against the individual Defendant officers because Plaintiff's facts, as alleged, demonstrate that the officers had probable cause to arrest Plaintiff, and when probable cause dissipated, Plaintiff was immediately released.  Defendants further assert that they are entitled to qualified immunity because Plaintiff has not identified any case that put the officers on notice that their conduct would violate his Fourth Amendment rights.

**A.   Legal Standards**

**1.   Rule 12(b)(6)**

Dismissal of a complaint, or any claim within it, for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).  In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant.  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**2.   Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In deciding if qualified immunity applies, a court must determine: (1) whether the facts alleged show the defendant's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation.  *Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009) (courts may address either prong first depending on the circumstances in the particular case).

The qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.  The plaintiff has the burden to show that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Romero v. Kitsap County*,

931 F.2d 624, 627 (9th Cir. 1991).  For qualified immunity purposes, "the contours of the right must be sufficiently clear that at the time the allegedly unlawful act is [under]taken, a reasonable official would understand that what he is doing violates that right;" and "in the light of pre-existing law the unlawfulness must be apparent." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quotations omitted).  Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not "clearly established" or the officer could have reasonably believed that his particular conduct was lawful.  *Romero*, 931 F.2d at 627.  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.  When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted).  The purpose of qualified immunity is "to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).

"Cases cast at a high level of generality are unlikely to establish rights with the requisite specificity." *Id.* at 388 (internal citation omitted).  "While a case addressing general principles may clearly establish a right in an obvious case, such obvious cases are rare." *Id.* (cleaned up).  "[T]his obviousness principle, an exception to the specific-case requirement, is especially problematic in the Fourth-Amendment context" "because a categorical statement that conduct obviously violates the Fourth Amendment is particularly hard to make when officers encounter suspects every day in never-before-seen ways, including countless confrontations that yield endless permutations of outcomes and responses." *Id.* (cleaned up).  As such, Fourth Amendment violations must be beyond debate to be considered obvious.  *Id.* (citation omitted).  The Court must "view the facts as an officer would have encountered them on the night in question, not as an ex post facto critic dissecting every potential variance under a magnifying glass." *Monzon v. City of Murrieta*, 978 F.3d 1150, 1157 (9th Cir. 2020).

In the context of an unlawful arrest, the two prongs of the qualified immunity analysis can be summarized as: "(1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Johnson v. Barr*, 79 F.4th 996, 1005 (9th Cir. 2023) (quoting *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (emphasis in original)).

### 3. False Arrest

To state a § 1983 claim for false arrest, a plaintiff must allege there was no probable cause for his arrest. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (citing *George v. City of Long Beach*, 973 F.2d 706, 710 (9th Cir. 1992)). In a false arrest case, "[p]robable cause arises when an officer has knowledge based on reasonably trustworthy information that the person arrested has committed a criminal offense." *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009). "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part." *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)); *Stoot v. City of Everett*, 582 F.3d 910, 918 (9th Cir. 2009) (same); *Illinois v. Gates,* 462 U.S. 213, 243 n. 13 (1983) ("A probable cause determination "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."). "Police officers may rely on the totality of facts available to them when determining whether probable cause exists to make an arrest." *United States v. Ortiz-Hernandez*, 427 F.3d 567, 573–74 (9th Cir. 2005)

### B. Discussion[1]

Defendants assert that Plaintiff's allegations are that the officers were dispatched to

---

[1] The Court can discern no meaningful difference between Plaintiff's Fourth Amendment "false arrest" claim and his Fourth Amendment "false imprisonment" claim. Accordingly, the Court assumes that these are the same claim. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter.").

the scene after an airline employee onboard the plane frantically called police dispatch and reported that Plaintiff was physically fighting with the crew, that there was a police emergency," and that police officers were told that they "needed to 'step it up' in order to respond to the disturbance hastily."  Defendants assert, that a trustworthy source, the flight crew member, reported facts that Plaintiff had just committed crimes, which would support charges under 49 U.S.C. § 46504 (criminal liability for "assaulting or intimidating a flight crew member or flight attendant"), Ariz. Rev. Stat. §§ 13-1203 (assault), or Ariz. Rev. Stat. § 13-1204 (aggravated assault).

In Response, Plaintiff argues that the Officers did not have probable cause because the phone calls to police dispatch were "completely false," and when the Officers arrived at the airport, Plaintiff was leaning against a wall and "voluntarily and peacefully raised his arms to wave at the Officer Defendants and let them know that he might be who they were looking for," but there were "no signs of a commotion, let alone a fight." (Doc. 13 at 5.)  Plaintiff asserts that this should have led the officers to have "grave doubts about the accuracy of information conveyed by the airline employee in the phone calls" resulting in a need for further investigation.  (*Id.* at 5.)  Plaintiff relies on the general proposition that a person cannot be arrested without probable cause to support his argument that the law is clearly established.

In Reply, Defendants assert that the officer received a credible report that Plaintiff had committed a felony by assaulting a flight attendant and reasonably believed there was probable cause to arrest and detain Plaintiff, and Plaintiff's demeanor and conduct at the time of the arrest did not dissipate probable cause, but heightened it because he identified himself as the suspect by putting his hands in the air, which is a universal show of surrender.

In a false arrest case, the qualified immunity analysis turns on whether the police officers reasonably but mistakenly concluded that probable cause existed to arrest, detain, and initiate the criminal prosecution."  *O'Doan v. Sanford*, 991 F.3d 1027, 1042 (9th Cir. 2021) ("Even assuming the officers lacked probable cause to arrest the [plaintiffs], the

1   officers are entitled to qualified immunity because they reasonably but mistakenly
2   concluded that probable cause was present.") (quoting *D.C. v. Wesby*, 538 U.S. 48, 49
3   (2018)).

4          Here, the facts alleged by Plaintiff suggest that the officers had probable cause to
5   arrest Plaintiff at the time of the arrest, and when the probable cause dissipated, officers
6   immediately released Plaintiff.  Even if officers did not have probable cause, however, the
7   facts demonstrate that the officers reasonably, but mistakenly concluded that probable
8   cause was present.   Plaintiff alleges that a flight crew member reported to police that
9   Plaintiff assaulted flight crew members.  Plaintiff does not allege that police had any reason
10   to doubt the veracity of the statements of the flight crew member.  *See United States v.*
11   *Rowland*, 464 F.3d 899, 908 (9th Cir. 2006) (among indicia of reliability of informant's tip
12   are known identity of informant, personal knowledge of the criminal activity, and absence
13   of apparent motive to fabricate for which he would be held accountable if his information
14   proved to be false.).  When police arrived, according to Plaintiff's own allegations, Plaintiff
15   identified himself as the "one they were looking for."  This does not suggest that probable
16   cause had dissipated, but rather suggests that the altercation had concluded.   Although
17   Plaintiff argues that the officers should have conducted further investigation before they
18   arrested him, because the officers already had probable cause, they did not need to conduct
19   further investigation before arresting him.  *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128,
20   1147 (9th Cir. 2012) ("While an officer may not ignore exculpatory evidence that would
21   negate a finding of probable cause, once probable cause is established, an officer is under
22   no duty to investigate further or to look for additional evidence which may exculpate the
23   accused.") (internal citations omitted); *Ewing v. City of Stockton*, 588 F.3d 1218, 1227 (9th
24   Cir. 2009) ("Once he has probable cause, an officer is not ordinarily required to continue
25   to investigate or seek further corroboration."); *see also United States v. Lopez*, 482 F.3d
26   1067, 1073 (9th Cir. 2007)  ("As a corollary . . . of the rule that the police may rely on the
27   totality of facts available to them in establishing probable cause, they also may not
28   disregard facts tending to dissipate probable cause.").

1    Plaintiff does not allege that the Defendant officers had any facts dissipating

2    probable cause at the time of the arrest, but rather alleges that after his arrest, officers

3    conducted further investigation and determined that probable cause had dissipated and, at

4    that point, officers released Plaintiff.

5    Accordingly, under the facts alleged by Plaintiff, Defendants had probable cause or,

6    alternatively, reasonably, but mistakenly, concluded that probable cause was present, and

7    are therefore entitled to qualified immunity.  Defendants' Motion to Dismiss will be

8    granted as to Counts One and Two.

9    **V.    Remand**

10    Plaintiff's remaining claims in this action are his state-law claims in Counts Three,

11    Four, Five, Six, and Seven against American Airlines.  Because the Court dismisses

12    Plaintiff's federal claims, the Court no longer retains federal question jurisdiction because

13    all remaining claims in this case are state law claims.  Thus, the only basis for federal

14    jurisdiction in this case is supplemental jurisdiction.

15    The Ninth Circuit has "often repeated that 'in the usual case in which all federal-

16    law claims are eliminated before trial, the balance of the factors . . . will point toward

17    declining to exercise jurisdiction over the remaining state-law claims.'"  *Acri v. Varian*

18    *Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *Carnegie-Mellon Univ.*

19    *v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  The Court is thus not inclined to continue to

20    exercise supplemental jurisdiction over Plaintiff's state-law claims.

21    Nonetheless, the Court will give the Parties an opportunity to be heard before

22    declining to exercise supplemental jurisdiction.  Within 10 days of the date of this Order,

23    if either Party seeks to have the Court continue to exercise supplemental jurisdiction, the

24    Party must file a Motion explaining why such jurisdiction is warranted.  If neither Party

25    files a Motion within 10 days of the date of this Order, the Court will remand this action to

26    the Maricopa County Superior Court.

27    . . . .

28    . . . .

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. 8).

(2)     Defendants' Motion to Dismiss (Doc. 8) is **granted**.

(3)     Defendant Denham is **dismissed** from this action pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure.

(4)     Defendant Unknown Denham is **dismissed from this action without prejudice**.

(5)     Plaintiff's state-law claims in Counts Three, Four, Five, Six, and Seven are **dismissed with prejudice** as asserted against Defendants Officers Cottrell, Denham, Blanc, Peru, and Hogan, for failure to comply with Arizona's Notice of Claim statute, Arizona Revised Statutes § 12-821.01(A).

(6)     Counts One and Two are **dismissed** because Defendants are entitled to qualified immunity as to those claims.

(7)     Because there are no remaining claims against them, Officers Cottrell, Denham, Blanc, Peru, and Hogan are **dismissed from this action without prejudice**.

(8)     If Plaintiff or Defendant American Airlines seek to have the Court continue to exercise supplemental jurisdiction over the state-law claims in this action, Plaintiff or Defendant must file a Motion explaining why such jurisdiction is warranted within **10 days** of the date of this Order.

(9)     If neither Party files such a Motion within **10 days** of the date of this Order, the Clerk of the Court must **remand** this action to Maricopa County Superior Court.

Dated this 23rd day of April, 2024.


Honorable Roslyn O. Silver
Senior United States District Judge