Patrick J. Kearns (*Admitted Pro Hac Vice*)
Taylor Allin (AZ Bar No. 031834)
Sarena L. Kustic (*Admitted Pro Hac Vice*)
**WILSON, ELSER, MOSKOWITZ,
　EDELMAN & DICKER LLP**
2231 East Camelback Road, Suite 200
Phoenix, Arizona 85016
Telephone: (480) 562-3660
Facsimile: (480) 562-3659
Email: Patrick.Kearns@wilsonelser.com
　　　Taylor.Allin@wilsonelser.com
　　　Sarena.Kustic@wilsonelser.com

*Attorneys for Defendant, American Airlines, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sean Bennett, an individual,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>City of Phoenix, a governmental entity; American Airlines, Inc., a foreign corporation; Officer Joel Cottrell and Jane Doe Cottrell, a married couple; Officer Benjamin Denham and Jane Doe Denham, a married couple; Officer Todd Blanc and Jane Doe Blanc, a married couple; Officer Peru and Jane Doe Peru, a married couple; Sergeant Hogan and Jane Doe Hogan, a married couple;<br><br>　　　　　　　　Defendant(s). | Case No. 2:23-cv-02425-ROS--DMF<br><br>**SEPARATE STATEMENT OF FACTS IN SUPPORT OF DEFENDANT AMERICAN AIRLINES' MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY, SUMMARY ADJUDICATION**<br><br>District Judge: Hon. Roslyn O. Silver<br>Magistrate Judge: Hon. Deborah M. Fine |

　　　Pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 56.1(a), Defendant AMERICAN AIRLINES hereby submits the following separate statement of facts in support of its Motion for Summary Judgment or Alternatively Summary Adjudication.

/ / /

/ / /

/ / /

1. On August 13, 2021, Plaintiff SEAN BENNETT ("Plaintiff") boarded American Airlines Flight 2391 from Phoenix, AZ, to Anchorage, AK. (**Dkt. No. 1-1**, Complaint, at ¶ 17.)

2. Plaintiff did not comply with flight crew instructions on board the subject aircraft. (**Exhibit A**, Declaration of Audrey Weishaar, at ¶¶ 1-12; **Exhibit B**, Declaration of Hannah Brown, at ¶¶ 1-5; **Exhibit C**, Declaration of Eryn Scannell, at ¶¶ 1-6.)

3. Plaintiff argued with the flight crew and shouted onboard the subject aircraft. (**Exhibit A**, at ¶¶ 8-14; **Exhibit B**, at ¶¶ 5-6; **Exhibit C**, at ¶¶ 6-8.)

4. Plaintiff's behavior was concerning and disruptive for the flight crew and other passengers. (**Exhibit A**, at ¶¶ 8-10; **Exhibit B**, at ¶¶ 3-7; **Exhibit C**, at ¶¶ 7-11.)

5. The flight crew determined Plaintiff needed to be removed from the subject aircraft. (**Exhibit A**, at ¶ 11.)

6. Plaintiff initially refused to deplane the subject aircraft when asked by flight crew. (**Exhibit D**, Excerpts from Deposition of Sean Bennett ("Bennett Depo."), at 50:17-51:3; 66:5-18; **Exhibit A**, at ¶¶ 11-13; **Exhibit B**, at ¶ 7.)

7. The Pilot called an American Airlines Tower Gate Dispatcher and reported, "We've got a combative passenger on board[,] we need police down here A.S.A.P." (**Exhibit E**, Plaintiff's Responses to Defendant's Interrogatories (Set One), No. 3; **Exhibit F**, Plaintiff's Supplemental Production, Phoenix Police Department Incident Report, Bates No. BENNETT_000098-109, at Bates No. BENNETT_000099.)

8. The Tower Gate Dispatcher called Aviation Police Dispatch and said, "On board the aircraft, I'll need LEO's, I have a male passenger her[e] being combative with flight crew." Aviation Police Dispatch asked if the passenger was physically fighting, and she responded, "That's my understanding." (**Exhibit E**, at No. 3., **Exhibit F**, at Bates No. BENNETT_000099.)

9. Plaintiff was eventually coaxed off the aircraft by another passenger after American Airlines told him they would have to deboard the while plane if he did not exit. (**Exhibit D**, at 49:23-51:3, 56:18-23, 66:5-18.; **Exhibit A**, at ¶ 14, **Exhibit B**, at ¶ 7; **Exhibit C**, at ¶ 10.)

10. Plaintiff traveled up the jetway bridge and forcefully "busted through" the door into the gate area at Gate A-20. (**Exhibit G**, Declaration of Annette Edmonds-Hodge, at ¶¶ 1-7; **Exhibit H**, Declaration of Jeff Ferrari, at ¶¶ 1-6.)

11. An American Airlines Gate Manager present at the gate was on the phone with an American Airlines Tower Gate Dispatcher and reported, "someone just busted out through the door. Can you get me LEO's because I got some guy that is very agitated…. LEO's. I gotta get in front of someone. OK." (**Exhibit E**, at No. 3; **Exhibit F**, at Bates No. BENNETT_000099.)

12. After the American Airlines Gate Manager requested law enforcement officers to the gate area, the Tower Gate Dispatcher made a second call to Aviation Police Dispatch and said, "Regarding Gate Alpha 20 and a combative passenger, they are currently off the aircraft and in the jetway" and "they do have him at the podium now, the gate podium, and they, please, they say please get LEO's there A.S.A.P." (**Exhibit E**, at No. 3; **Exhibit F**, at Bates No. BENNETT_000099.)

13. American Airlines did not provide any other statements to law enforcement prior to Plaintiff's arrest. (**Exhibit E**, at No. 1.)

14. Plaintiff eventually left the gate area at Gate A-20 and walked toward the Admiral's Club across from Gate A-20. (**Exhibit G**, Declaration of Annette Edmonds-Hodge, at ¶ 8; **Exhibit H**, Declaration of Jeff Ferrari, at ¶ 7.)

15. Police officers encountered Plaintiff near the Admiral's Club across from Gate A-20. (**Exhibit I**, Plaintiff's Reponses to Requests for Admission (Set One), at No. 21; **Exhibit G**, at ¶ 9; **Exhibit H**, at ¶¶ 7-8; **Exhibit F**, at Bates No. BENNETT_000108.)

/ / /

16. Plaintiff got into a physical altercation with the police officers and was arrested. (**Exhibit D**, at 68:1-11; **Exhibit F**, at Bates No. BENNETT_000108.)

17. The arrest Plaintiff complains of occurred on August 13, 2021. (**Exhibit D**, at 23:2-6; **Exhibit I**, at No. 21; **Exhibit F**, at Bates No. BENNETT_000108.)

18. Plaintiff commenced this case on August 11, 2023. (**Docket. No. 1-1**, Complaint.)

19. Law enforcement officers are trained on how to assess the situations they encounter, including a suspect's body language, reactions, and threats, and evaluate each situation in order to react appropriately. (**Exhibit J**, Deposition of Officer Todd Blanc, at 30:21-25.)

20. Police officers must independently decide whether physical force is appropriate and only use such force when necessary. (**Exhibit J**, at 31:5-13.)

21. While a reported physical altercation may cause an officer to act with more urgency to arrive on scene, the officer must still individually and independently assess the circumstances they are confronted with when her or she arrives to the scene. (**Exhibit J**, at 40:7-16.)

22. Officers do not use force simply because they receive an urgent call but, instead, will only physically subdue a suspect if, based on their own independent judgment, the suspect is non-compliant or threatening. (**Exhibit J**, at 40:17-41:1; 41:17-20.)

/ / /

/ / /

/ / /

/ //

/ / /

/ / /

/ / /

/ / /

23. Plaintiff concedes that responding officers have an independent duty to investigate the situation prior making an arrest. (**Dkt. No. 13**, Plaintiff's Response in Opposition to City Defendants' Motion to Dismiss, at 5:20-6:12.)

Respectfully submitted,

Dated: December 22, 2025

By:  */s/ Patrick Kearns*
Patrick J. Kearns, Esq.
Taylor Allin, Esq.
Sarena L. Kustic, Esq.
*Attorneys for Defendant, American Airlines, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed and served this 22nd day of December 2025, using this Court's CM/ECF filing system which will electronically transmit a copy to all counsel of record.

Respectfully submitted,

Date: December 22, 2025

By: */s/ Patrick Kearns*
Patrick J. Kearns, Esq.
*Attorneys for Defendant, American Airlines, Inc.*