Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Sean Bennett, an individual,<br><br>               Plaintiff,<br><br>     vs.<br><br>City of Phoenix, a governmental entity; American Airlines, Inc., a foreign corporation; Officer Joel Cottrell and Jane Doe Cottrell, a married couple; Officer Benjamin Denham and Jane Doe Benham, a married couple; Officer Todd Blanc and Jane Doe Blanc, a married couple; Officer Peru and Jane Doe Peru, a married couple; Sergeant Hogan and Jane Doe Hogan, a married couple,<br><br>               Defendants. | No.: CV-23-02425-PHX-ROS (DMF)<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT AMERICAN AIRLINES' MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION**<br><br>(Assigned to the Honorable Roslyn O. Silver and referred to the Honorable Deborah M. Fine for all pretrial proceedings) |

Through counsel undersigned and pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Sean Bennett ("Plaintiff") hereby responds in opposition to the Motion for Summary Judgment or, Alternatively, Summary Adjudication ("the MSJ") filed by Defendant American Airlines, Inc. ("Defendant") in this action. Plaintiff's claims are not barred by the Airline Transportation and Security Act, because Defendant made statements about him to police that were blatantly false – i.e., that he was "combative" and "physically fighting" – when he was, in fact, compliant and peaceful. Defendant and its employees

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

either knew those statements were false, or at a minimum, uttered them with reckless disregard as to whether or not they were true.  In addition, Plaintiff's assault and battery claims should proceed, because Defendant's employees engaged in conduct that resulted in Plaintiff being physically attacked by the police.

This Response is supported by Plaintiff's concurrently filed Response to Defendant's Separate Statement of Facts, in particular Plaintiff's Controverting Statement of Facts (the "CSOF") contained therein, and the Exhibit attached thereto.  It is also supported by the relevant parts of the record in this action, and the Memorandum of Points and Authorities below.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    RELEVANT FACTS

Plaintiff initially boarded the plane at issue and took the seat to which he was assigned.  CSOF ¶ 1.  A woman not wearing any type of American Airlines uniform or indicia subsequently walked up to him, pointed to a seat across the aisle, and said, simply – "[m]ove." CSOF ¶ 2. On the phone with his wife at the time, he simultaneously reached into his pocket to produce his ticket to the woman, but she left.  CSOF ¶ 3.

Shortly thereafter, a second woman, this one wearing American Airlines insignia, came toward him, screaming and yelling at him.  CSOF ¶ 4. The second woman screamed at him that if he didn't leave the plane now, they would deboard the entire flight, which the other passengers heard and became angry at him as a result. CSOF ¶ 5. Plaintiff had caused no negative interaction, incident, or disruption of any kind – absolutely nothing that

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

2

objectively would or should have led to Defendant's staff screaming at him to leave. CSOF ¶ 6.

Once Defendant's employees told him to leave, Plaintiff began exiting right away, on his own accord.  CSOF ¶ 7. Plaintiff was wearing a mask during the majority of the incident, and at least until he began leaving the plane.  CSOF ¶ 8. As he left, another military veteran helped Plaintiff get off, in order to protect him from any violence from others. CSOF ¶ 9. Plaintiff exited the plane to the jet bridge, and then went through the jet bridge door back into the Gate area.  *See* CSOF ¶¶ 10-11.

Plaintiff had no physical altercation on the plane or in the jet bridge, with anyone. CSOF ¶ 11.  During the entirety of the incident, Plaintiff never said anything about killing people, never uttered any obscenities, and did not rant, speak loudly, or frighten anyone on the plane.  CSOF ¶¶ 12-14.

Despite all the above facts, while Plaintiff was on the plane, the pilot called Defendant's Tower Gate Dispatcher "Heather" and told her there was "A *COMBATIVE* PASSENGER ON BOARD," for which "WE NEED POLICE DOWN HER[E] *A.S.A.P.*" CSOF ¶ 15 (emphasis added). "Heather" in turn relayed to City of Phoenix aviation police dispatch that "ON BOARD THE AIRCRAFT, I'LL *NEED LEO'S*, I HAVE A MALE PASSENGER BEING *COMBATIVE* WITH FLIGHT CREW."  CSOF ¶ 16 (emphasis added).  Police aviation dispatch then asked "Heather" if the passenger was "*PHYSICALLY FIGHTING*," to which "Heather" replied "THAT'S MY UNDERSTANDING, *YES*."  CSOF ¶ 17 (emphasis added).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

3

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

After Plaintiff had entered the Gate area, Defendant's Gate Manager "Jeff" called Defendant's Tower Gate Dispatcher "Kris" and told him/her that "SOMEONE JUST BUSTED OUT THROUGH THE DOOR . . . CAN YOU *GET ME LEO'S* BECAUSE I GOT SOME GUY THAT IS *VERY AGITATED*. *LEO'S*. I GOTTA GET IN FRONT OF SOMEONE." CSOF ¶ 18 (emphasis added). In turn, Defendant's Tower Gate Dispatcher "Heather" then called police aviation dispatch and stated: "THIS IS HEATHER . . . REGARDING . . . A *COMBATIVE* PASSENGER WHO IS CURRENTLY OFF THE AIRCRAFT AND IN THE JETWAY." CSOF ¶ 19 (emphasis added). When police aviation dispatch asked her "IS HE STILL BEING COMBATIVE," "Heather" replied:

> YES, HE IS *STILL BEING COMBATIVE*. . . . AND THEY DO HAVE HIM AT THE PODIUM NOW, THE GATE PODIUM, AND THEY, PLEASE, THEY SAY *PLEASE GET LEO'S THERE A.SAP.*

CSOF ¶ 20 (emphasis added). When police aviation dispatch then told her "WE'LL LET THE OFFICERS KNOW THAT THEY NEED TO *RESPOND A LITTLE BIT QUICKER*," "Heather" responded "YES, *PLEASE*." CSOF ¶ 21 (emphasis added).

While Plaintiff was still in the vicinity of the Gate area, police officers arrived in response to Defendant's multiple urgent requests. CSOF ¶ 22. Plaintiff then raised his hands and said, "I think you're looking for me." CSOF ¶ 23. The officers then aggressively came at Plaintiff, without any other words exchanged, or any confrontation occurring, beforehand. CSOF ¶ 24. Plaintiff observed them coming at him to tackle him, and in response "tensed [his] entire body up and then loosened it," "because [he] knew [he] was about to be hammered." CSOF ¶ 25. Plaintiff was then "bulldogged, body slammed, by one of the cops, and then the rest of them [ ] were basically on top of [him] . . . . [he] [ ]

got lifted in the air, off the wall, bounced off the wall, hit the ground, both elbows." CSOF ¶ 26.  The police had responded to Plaintiff physically and aggressively as they did, because they had been told by Defendant's employees he was assaulting people on an aircraft, fighting, and combative, all key words that get police animated.  CSOF ¶ 27.

## II.    <u>ARGUMENT</u>

### A.    <u>Standard for Resolving a Motion for Summary Judgment</u>

"Summary judgment is appropriate when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Russell v. Flores*, No. CV-14-02474-TUC-RM (EJM), at *6 (D. Ariz. Jan. 9, 2017) (quoting Fed. R. Civ. P. 56(c)).   "In evaluating a motion for summary judgment, the Court must make all inferences in the light most favorable to the non-moving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "If 'the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial.'"  *Williams v. Circle K Stores Inc.*, No. CV-19-01952-PHX-SMB, at *10 (D. Ariz. Sep. 25, 2020) (quoting *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002)). "'In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.'" *Konarski v. City of Tucson*, No. CV 11-612-TUC-LAB, at *6-7 (D. Ariz. June 4, 2018) (quoting *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990) (court may not make credibility determinations or weigh conflicting evidence).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

B.    <u>Summary Judgment for Defendant is Not Warranted Under the Airline Transportation and Security Act.</u>

Defendant argues that the Airline Transportation and Security Act ("ATSA") is fatal to all of Plaintiff's claims.  Defendant is wrong.

The ATSA immunizes airlines and their employees from liability for certain statements made to federal, local, airport, or airline, law enforcement or security personnel.  In relevant part, it reads:

> (a) IN GENERAL.-Any air carrier . . . or any employee of an air carrier . . . who makes a voluntary disclosure of any suspicious transaction relevant to a possible violation of law or regulation, relating to air piracy, a threat to aircraft or passenger safety, or terrorism, . . . to any employee or agent of . . . any . . . local law enforcement officer, or any airport or airline security officer shall not be civilly liable to any person . . . for such disclosure.
>
> (b) APPLICATION.-Subsection (a) shall not apply to-
>
> (1) any disclosure made with actual knowledge that the disclosure was false, inaccurate, or misleading; or
> (2) *any disclosure made with **reckless disregard as to the truth or falsity** of that disclosure.*

49 U.S.C. § 44941 (emphasis added).  Statements made to other airline personnel are also protected, so long as they are a "step in the chain of events that led to 'a voluntary disclosure' of a possible threat to law enforcement personnel."  *Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 276 (2d Cir. 2015).

Here, none of the relevant statements made by Defendant's employees, either to other employees or to police dispatch, are protected by the ATSA, because they fall under at least one of the exceptions in Section (b). First, while Plaintiff was still on the plane, the pilot called Defendant's Tower Gate Dispatcher "Heather" and told her a "***COMBATIVE PASSENGER***" was on board, for which "WE NEED POLICE . . . ***A.S.A.P.***"  CSOF ¶ 15

6

(emphasis added).  Remarkably, the pilot made this statement even though no physical altercation of any kind had occurred between Plaintiff and another person.  *See* CSOF ¶ 11.  Not only that, but Plaintiff did not rant, speak loudly, or frighten anyone on the plane. CSOF ¶ 14. He did not utter any obscenities.  CSOF ¶ 13. He was compliant.  *See* CSOF ¶¶ 1, 7-8.  He had caused no negative interaction, incident, or disruption of any kind.  CSOF ¶ 6.

The Pilot's statement that Plaintiff was "COMBATIVE" was clearly false. At the very least, it was inaccurate or misleading.  It is not protected by the ATSA if the Pilot uttered it with "actual knowledge" it was false, inaccurate, or misleading.  49 U.S.C. § 44941(b)(1).  The actual facts set forth above showing that Plaintiff was, in fact, peaceful, compliant, and non-threatening, raise a strong inference (and for purposes of the MSJ all such inferences are viewed in Plaintiff's favor) that the Pilot was aware of those facts at the time of this statement.

However, even if the Pilot actually believed, all evidence to the contrary, that Plaintiff was "COMBATIVE," the statement of same to Tower Dispatch, along with an urgent plea to get police there "A.S.A.P.," was nevertheless made with reckless disregard as to its truth or falsity. Though Defendant notes that "'combative' does not necessarily mean physically fighting; it means 'marked by eagerness to fight or contend,'" MSJ 12:5-6, the evidence shows that Plaintiff was *not* eager to fight or contend, *see* CSOF ¶¶ 1-14. Moreover, even if that is the common definition of "combative" as understood by a layman, that the Pilot coupled it with an urgent plea to get police there "A.S.A.P." shows he intended it to be understood in the context of a physical altercation.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

7

1

2

For all the above reasons, the Pilot's statement to Defendant's Tower Gate
Dispatcher "Heather" fall within § 44941(b), and are not protected by the ATSA.

3

4

5

6

7

8

9

"Heather" then spoke directly to police dispatch, telling them Defendant "NEED[S]
LEO'S," as there is "A MALE PASSENGER BEING ***COMBATIVE*** WITH FLIGHT
CREW." CSOF ¶ 16 (emphasis added). Police dispatch then asked her if the passenger
was "***PHYSICALLY FIGHTING***," to which she replied, "THAT'S MY
UNDERSTANDING, ***YES***." CSOF ¶ 17 (emphasis added).

10

11

12

13

14

15

16

17

18

19

For similar reasons as the Pilot's statement, these statements by "Heather" are also
not immunized by the ATSA. She also states, contrary to the facts on the ground, that
Plaintiff was being "combative" with flight crew, but she goes even *beyond* the Pilot, and
directly confirms to police that he is "physically fighting." These statements were blatantly
false, let alone inaccurate or merely misleading. Even more so than the Pilot's statement,
"Heather's" statements to police dispatch are outside the protection of the statute, because
they were made with actual knowledge they were false, inaccurate, or misleading, or at
least made with reckless disregard of their truth or falsity.

20

21

22

23

24

25

26

27

In regard to the Pilot's and "Heather's" statements, one of two possibilities is true:
(1) in referring to him as "combative," the Pilot did, in fact, mean that Plaintiff was
physically fighting with flight crew, in which case the Pilot's statement was not only false,
inaccurate, and misleading, but, knowing what such a statement would likely cause the
police to do, uttered with *extreme* recklessness – **or**; (2 ) in referring to him as "combative,"
the Pilot meant that Plaintiff was merely argumentative or verbally contentious, not
physically fighting (which, as set forth above, was still false), in which case "Heather" was

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

8

*extremely* reckless for concluding and stating to police dispatch that Plaintiff was, in fact, physically fighting.  Defendant cannot have it both ways.  At least one of those individuals' statements (and likely both) are not protected by the ATSA.

Finally, after Plaintiff had re-entered the Gate area, Heather made a second, subsequent statement to police dispatch that, for similar reasons, is not entitled to protection from liability.  She reiterated that he was *still* "COMBATIVE."  CSOF ¶ 19.  In fact, she stated that "HE IS ***STILL*** BEING ***COMBATIVE***. . . . PLEASE . . . ***PLEASE GET LEO'S*** THERE *A.SAP.*"  CSOF ¶ 20 (emphasis added). In truth, there is no evidence that Plaintiff was combative, fighting, or confrontational while back in the Gate area.  Defendant's only allegation to support such a contention is that Defendant "forcefully 'busted through' the door into the gate area," *see* Def.'s SSOF ¶ 10, but Plaintiff denies this, CSOF ¶ 10.  Consequently, this last statement from "Heather" to police dispatch is also blatantly false, inaccurate, and misleading.  For similar reasons as the above statements, it was also uttered either with actual knowledge it was false, inaccurate, misleading, or with reckless disregard of its truth.

To reiterate, and as stated above – for purposes of ruling on the MSJ all inferences from the facts in the record are to be viewed in the light most favorable to Plaintiff.  *See Russell v. Flores*, No. CV-14-02474-TUC-RM (EJM), at *6.  Though in light of the foregoing it is clear that each and every statement discussed above was uttered either: with knowledge it was false, misleading, or inaccurate, or; with reckless disregard as to its truth or falsity – nevertheless, at the very least the totality of the record supports an *inference* to that effect as to each statement, inferences Plaintiff is entitled to the benefit of.  *See id.*

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

9

1   Accordingly, summary judgment in favor of Defendant pursuant to the ATSA is not

2   warranted.

3       **C.**   **Summary Judgment and/or Adjudication in favor of Defendant on**
        **Plaintiff's Claims for Assault and Battery is Not Warranted.**

4

5       Despite Defendant's protestations, there is ample evidence in the record to support

6   Plaintiff's assault and battery claims.  In Arizona, "[t]o prevail on a claim for civil assault,

7   a plaintiff must prove that the defendant intended to cause plaintiff either a harmful or

8   offensive contact, or an imminent apprehension of such contact."  *Cobb v. Dias Mgmt.*, 2

9   CA-CV 2023-0238, at * 5, ¶ 15 (Ariz. App. Aug 05, 2024) (citing Restatement (Second)

10  of Torts § 21 (1965)).  He "must also prove that the defendant's conduct actually caused

11  plaintiff to feel apprehension of the harmful or offensive contact."  *Id.* (citing Restatement

12  (Second) of Torts § 21 (1965)).

13

14      Here, the record evidence shows that Defendant, via its employees, made multiple

15  false statements to police dispatch to the effect that Plaintiff had been, and was still being,

16  "combative," even directly stating that he was *physically fighting* with its employees,

17  coupled with repeated requests that police arrive as quickly and as urgently as possible.

18  *See* CSOF ¶¶ 15-21. There can be no reasonable doubt about what the intent in making

19  such statements to law enforcement was.  Clearly, Defendant's employees intended to

20  cause police officers to become animated and ready themselves for a likely physical

21  confrontation with Plaintiff, which is exactly what the police initiated when they first

22  encountered him, and exactly *why* they did so.  *See* CSOF ¶¶ 24-27.

23

24      In sum, the evidence in the record shows that "[D]efendant intended to cause

25  [P]laintiff either a harmful or offensive contact," or at the very least an "imminent

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

apprehension of such contact," *see Cobb*, 2 CA-CV 2023-0238, at * 5, ¶ 15, from urgently inbound responding police officers.  Moreover, Defendant's conduct in making the above statements to police dispatch proximately caused the incoming officers to respond to Plaintiff physically and aggressively, *see* CSOF ¶ 27, which in turn caused Plaintiff (just prior to being taken down by them) to feel apprehension of that imminent harmful contact, *see* CSOF ¶ 25.  *See Cobb*, 2 CA-CV 2023-0238, at * 5, ¶ 15.  Summary judgment for Defendant on Plaintiff's assault claim is not warranted.

In addition, under Arizona law "[t]he elements of common law battery consist of an intentional act by one person that 'results in harmful or offensive contact with the person of another.'"  *Rice v. Brakel*, 233 Ariz. 140, 143, ¶ 8 (App. 2013) (quoting *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, ¶ 9 (2003)).  For the same reasons set forth above, here Defendant's employees' intentional conduct in making those statements to police dispatch, *see* CSOF ¶¶ 15-21, about Plaintiff proximately caused police officers to use physical and violent contact against him, *see* CSOF ¶¶ 26-27.  The elements of battery are evident in the record, and summary judgment on that claim is not warranted.

D.    **Plaintiff Does Not Contest That His False Arrest and Imprisonment Claim Was Brought Outside of the Applicable Limitations Period.**

Defendant correctly notes that "Arizona law provides a one-year statute of limitations for false imprisonment claims."  MSJ (citing A.R.S. § 12-541); *see also* A.R.S. § 12-541(1).  Because "[c]laims for false arrest and imprisonment accrue on the date of the arrest," *Medrano v. City of Phx.*, No. 1 CA-CV 13-0484, * 4, ¶ 10 (Ariz. App. Oct 30, 2014) (first citing *Hansen v. Stoll*, 130 Ariz. 454, 460 (App. 1981); and then citing *Rondelli v. Pima County*, 120 Ariz. 483, 485 (App. 1978)), and Plaintiff filed his Complaint more

11

than a year after his arrest and detention by the police, *compare* Pl. Compl. at 1, Aug. 11, 2023, *with id.* ¶ 17, Plaintiff does not contest Defendant's contention that his false arrest and imprisonment claim is untimely.

**III.**   **CONCLUSION**

For all the foregoing reasons, the Court should deny the MSJ, rule in favor of Plaintiff, and order that Plaintiff's claims (except for his false arrest and imprisonment claim) should proceed to trial.

**RESPECTFULLY SUBMITTED** this 11th day of February 2026.

**MILLS + WOODS LAW, PLLC**

By    */s/ Sean A. Woods*
      Robert T. Mills
      Sean A. Woods
      5055 N 12th Street, Suite 101
      Phoenix, AZ 85014
      *Attorneys for Plaintiff*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Patrick J. Kearns, Esq.
Patrick.Kearns@wilsonelser.com
Taylor Allin, Esq.
Taylor.Allin@wilsonelser.com
Sarena Kustic, Esq.
Sarena.Kustic@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
katelyn.kingsley@wilsonelser.com
ashlynn.robbins@wilsonelser.com
emilee.staley@wilsonelser.com
2231 E Camelback Rd., Ste. 200
Phoenix, Arizona 85016
*Attorneys for Defendant American Airlines
Group, Inc.*


        */s/ Ben Dangerfield*